Filed 2/22/24  In re K.G. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.G., a Person Coming Under the Juvenile Court Law. | B330331 (Los Angeles County Super. Ct. No. 17CCJP00200D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DANIEL G., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy A. Ramirez, Judge.  Affirmed.

Jane B. Winer, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

---

## I.  INTRODUCTION

Daniel G. (father) appeals from the juvenile court's order terminating parental rights to his child K.G. (the child), born in 2014, pursuant to Welfare and Institutions Code section 366.26.[1] Father asserts the juvenile court erred by finding the parental-benefit exception to adoption did not apply.  We affirm.

## II.  BACKGROUND

A.  *Jurisdiction*

In December 2017, the juvenile court sustained a dependency petition pursuant to section 300, subdivision (b)(1) on behalf of the child and the child's older sister.  The court subsequently terminated jurisdiction, granted mother sole physical custody, and granted father monitored visitation.

On July 16, 2020, the Department detained the child and placed him with maternal grandmother, who had custody of the

---

[1]     Further statutory references are to the Welfare and Institutions Code.

child's older sister and had cared for both children for three years in connection with the prior dependency proceeding.

On July 20, 2020, the Department filed a section 300 petition on behalf of the child, which, as later amended and sustained, alleged that mother had endangered the child's physical safety by engaging in criminal activity while the child was in her care and that father had left the child without any provisions or support.

On March 1, 2021, the juvenile court ordered the child removed from the parents' custody and placed with maternal grandmother. The court granted father monitored visitation and ordered that the visits be unmonitored if father had no missed or positive drug tests.

B.    *Six-Month Review Hearing*

On August 16, 2021, the Department filed its status review report, explaining that father failed to appear for 14 drug tests and tested positive for marijuana metabolites on March 10, 2021.

At the time of the status review report, father's case plan included one monitored visit per week for three hours at maternal grandparents' home. The child's caregivers reported that father engaged with the child during the visits. They expressed concern, however, over father's lack of patience with the child, who had Downs syndrome and behavior problems, including tantrums, loud screaming, and excessive running. Although father was initially consistent in his weekly visits, after father began attending parenting classes, he visited the child only once in two months. Father did not request a make-up visit

or an alternative time for the visits. Nor did father contact the child by telephone.

At the six-month review hearing on August 30, 2021, the juvenile court ordered that father's visits be liberalized to overnight visits on the condition that father not miss any drug tests or have any positive drug tests.

C.    *Twelve-Month Review Hearing*

On November 12, 2021, the Department filed its status review report. The Department had not liberalized father's visits with the child because, among other things, he had seven no shows for drug tests and did not provide information the Department had requested of him, including a driver's license, car insurance information, or contact information for his proposed monitor.

The caregivers reported that father engaged with the child during his weekly visits.

In a last-minute information for the court filed on December 10, 2021, the Department reported that father had not visited the child in October, had one two-hour visit in November, and one two-hour visit in December. Father did not stay long during these visits. The child used sign language to try to communicate with father, but father did not understand sign language and did not attempt to learn it. The child therefore became frustrated.

At the 12-month review hearing on December 13, 2021, the juvenile court ordered continued family reunification services. The court granted father unmonitored visits, on the condition

that he have two consecutive low-level positive or negative drug tests.

D.   *Eighteen-Month Review*

On February 25, 2022, the Department filed another status review report.  Father sporadically visited the child on weekends.  Because father had been inconsistent with his case plan and drug testing, his visits remained monitored, and he continued to visit the child at maternal grandparents' home.

Maternal grandmother reported that the child appeared to be happy when father visited and would hug him.  She provided the Department with a visitation log dated January 16, 2021, to February 19, 2022.  The Department reported on father's visitation during the period September 2021 to February 2022.  On two weekends, maternal grandparents and the child were out of town, and father therefore was unable to visit.  Father did not, however, ask to make up these visits.  As to the remaining weekends, father did not visit on 11 occasions.  Father explained why he missed two weekends:  he was attending a parenting class and had car problems.  Father provided no explanation for why he missed the other nine weekends.

The Department reported that the total hours per month that father spent visiting the child ranged from a low of one and one-half hours in December 2021 to a high of eight and one-half hours in February 2021.

At the 18-month review hearing on March 14, 2022, the juvenile court terminated family reunification services and set a section 366.26 hearing.  The court also ordered a bond study.

E.    *Section 366.26 Reports*

The Department filed its section 366.26 report on July 1, 2022.  Maternal grandparents were committed to adopting the child, who had lived with them since July 2020 and was bonded with them.

Since March 2022, father had visited the child only three times.  According to maternal grandmother, although father made efforts during his visits, he was unable to engage with the child.  Maternal grandmother reported that the child was "not bonded" to father.  When father missed visits, the child proceeded with his day as usual.

On August 25, 2022, the Department filed a status review report, and explained that between February to August 2022, father was supposed to have 28 visits but had only visited 10 times.  Of the 18 missed visits, the caregivers and the child were out of town for one weekend.  Father missed two visits because of a fractured finger and a lack of gas money.  The total time father spent visiting with the child ranged from four hours in February 2022 to no visits in June or July of 2022.

In February 2023, the Department reported that from August 2022 to February 2023, father visited the child once a month, with two visits in November 2022.  Maternal grandparents reported father tended to end his visits early and did not stay the full three hours.

F.    *Bond Study*

On May 12, 2023, Dr. Nancy Kaser-Boyd filed the results of her bond study.  She explained that she had conducted a forensic

interview and psychological test of father on March 3, 2023, and observed one visit between father and the child on April 29, 2023, at maternal grandparents' home. She noted father was involved in the child's life during the child's early years and had formed an attachment with him. Dr. Kaser-Boyd opined that father loved the child, and the child would benefit from a continued visitation relationship with him. She recommended legal guardianship.

G.     *Section 366.26 Hearing*

On June 13, 2023, the juvenile court conducted a hearing pursuant to section 366.26, and received into evidence the Department's reports.

Father's counsel argued that the parental benefit exception (§ 366.26, subd. (c)(1)(B)(i)) applied. Although counsel acknowledged that father's visits were inconsistent, counsel explained that "he has been a consistent presence in [the child's] life." Counsel asserted that father visited as often as he could and termination of father's parental rights would be detrimental to the child. The Department's counsel argued that the parental benefit exception did not apply.

Following argument, the juvenile court found Dr. Kaser-Boyd's bond study to be unpersuasive because it was conclusory, lacked sufficient detail and analysis, and the doctor had formed her opinion based only on one observed visit and one interview of father.

The juvenile court then made findings regarding the parental benefit exception and cited the three elements described in *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*). For the first prong, which the court explained was "whether there have been

regular visits and contact," the court found father did not satisfy this requirement, stating: "[Father] has not seen [the child] to the full extent allowed by law. . . . [¶] The reports state consistently he does not stay the duration of the visits. . . . . And when the court reviews the record the court find that he has consistently not visited as much as he was allowed under the court-ordered visits."

As to the second prong, whether the continued relationship would benefit the child, the juvenile court found that father had not met his burden to demonstrate that the child had a "substantial positive emotional attachment" to father.

As to the third prong, whether termination of the relationship would be detrimental to the child, the juvenile court found there would be no such detriment: "[The child] has been in the care of his maternal grandparents consistently since July of 2020, almost three years. He lives with his sister, who he appears to be attached to. His grandparents have provided for his security and stability. They understand his special needs."

The juvenile court found the child suitable for adoption and terminated the parents' parental rights. Father timely appealed.

## III. DISCUSSION

A. *Legal Standard*

"[T]he goal at the section 366.26 hearing is 'specifically . . . to select and implement a permanent plan for the child.' [Citations.] To guide the court in selecting the most suitable permanent arrangement, the statute lists plans in order of preference and provides a detailed procedure for choosing among

8

them.  [Citation.]  According to that procedure, the court must first determine by clear and convincing evidence whether the child is likely to be adopted.  [Citation.]  If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption.  [Citation.]  But if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan.  [Citation.]'"  (*Caden C., supra*, 11 Cal.5th at pp. 630–631.)

One such enumerated exception to the termination of parental rights is the beneficial parental relationship exception.  (§ 366.26, subd. (c)(1)(B)(i).)  In order to demonstrate that this exception applies, a parent must show: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*Caden C., supra*, 11 Cal.5th at p. 631.)

B.    *Analysis*

"The first element—regular visitation and contact—is straightforward.  The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'  [Citation.]  Visits and contact 'continue[ ] or develop[ ] a significant, positive, emotional attachment from child to parent.'  [Citation.]  Courts should consider in that light whether parents 'maintained regular visitation and contact with the child' [citation] but certainly not to punish parents or reward them for

9

good behavior in visiting or maintaining contact—here, as throughout, the focus is on the best interests of the child." (*Caden C., supra*, 11 Cal.5th at p. 632.) We review the juvenile court's findings for substantial evidence. (*Id.* at p. 639.)

Father contends on appeal that the juvenile court made a mistake of law when considering the first prong of the parental benefit exception. According to father, the court's use of the term "full extent allowed by law" demonstrates it mistakenly believed that father could not satisfy the first prong if he missed any visits, and failed to take into account the many legitimate circumstances that prevented father's visits. We disagree.

We do not interpret the juvenile court's reference to "full extent allowed by law" as evincing a misapprehension about the elements of the parental benefit exception. Indeed, the court accurately described the first element as "whether there have been regular visits and contact." (See *J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 644 ["Error on appeal must be affirmatively shown by the record, and '[w]e presume the trial court knew and properly applied the law absent evidence to the contrary'"].) Instead, the record demonstrates that the court considered the consistency of father's visits in light of the court's orders. And, regardless of the court's orders, the court found father did not visit consistently, but sporadically. Substantial evidence supports a finding that father did not maintain regular visitation and contact with the child. After the child was removed from father's custody at the disposition hearing, father missed multiple visits for which he provided no excuse. Further, during the course of the dependency proceedings, father reduced the frequency of his visits from weekly to monthly to eventually not visiting for long periods of time. Substantial evidence therefore

10

supports the court's finding that father did not have regular visitation and contact with the child.  We therefore need not discuss the parties' arguments concerning the second and third elements of the beneficial parental relationship exception.  The court did not err in terminating parental rights.

## IV.   DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

11